May 16, 1904.

———o———

No. 3462.

(Court of Appeal, Parish of Orleans.)

A. A. CARRIERE vs. JULES DOMECQ & SON.

Questions of fact are involved in this case.

Appeal from Civil District Court, Division B.

Chas. F. Claiborne, for plaintiff and appellant.

Chas. J. Theard, for defendant and appellee.

BEAUREGARD, J. From the judgment of the Court a qua rejecting his demand and dismissing his suit plaintiff appeals.

He claims, as a broker so employed by defendants, to sell their confectionery establishment known as "Domecq's Confectionery" a commission of 5 per cent. or $175.00 on the price of sale thereof ($3500.00) to one H. C. Schaumburg.

Defendants tendered the general issue and the trial of the case resulted as above stated.

Neither counsel (for appellant and appellees) dispute the principles enounced in the authorities cited by counsel for plaintiff in his brief, to wit: 1 A. 5, and 6 A. 398, to the effect that, where a broker or agent, charged to sell his principal's property, was the efficient cause of the sale, by finding a purchaser to whom such sale was made, either directly through him (the broker), or privately by

236

the principal to the purchaser found, the broker is entitled to the commission he claims. Counsel for plaintiff urges that these principles apply to the case at bar; counsel for defendants, that they do not.

A general review of the facts must be made,

It appears that in 1901 Domecq & Son sought a purchaser for their establishment; negotiations to that end were entered into with H. C. Schaumburg, but fell through due to some difficulty in the way.

In the latter part of March or early days of April, 1902, actuated by the same desire to sell out their establishment, they placed the matter in the hands of the plaintiff herein, pointing out to him at the time H. C. Schaumburg as a possible purchaser. Schaumburg was then interviewed on the subject by Carriere, but the former's then existing partnership in the McCloskey's confectionery establishment was urged as an obstacle in the way for entertaining Carriere's offer to sell. The latter then directed his efforts elsewhere, calling in vain on various parties. Returning off and on to Schaumburg the latter promised him (Carriere) assistance in effecting a sale.

In the meantime, throughout April, May and early days of June Carriere was a constant caller at his principal's establishment giving there no definite information as to any possible or probable buyer in sight. This lasted till about the 8th of June, when finally, tired, says Domecq, with these delays, and through his son, Carriere was informed that his services were no longer needed; that he was discharged; because, to use the expressions of Domecq's son, "the fire was out."

Pending the happening of these occurrences, it appears that, due to some misunderstanding between Schaumburg and his partner McCloskey, their partnership was severed.

That on suggestion of his counsel herein (and to whom this misunderstanding had been referred and who had urged a dissolution of partnership) to purchase the Domecq's establishment (counsel not knowing that Carriere had been employed as a broker to sell same and had been discharged and Schaumburg not informing him of the interviews he had had with Carriere on the subject as a remunerative investment, Schaumburg, either acting on the information conveyed to him that the Domecq's establishment was for sale, or had been for sale; or, independently, after the severance of his connection with McCloskey on the suggestion of his counsel to buy, went directly to Domecq & Son. Inquired there if the establishment was still for sale ; he made his offer to buy; and on the 12th of June, two or three days after Carriere had been discharged, settled his terms of purchase, taking charge of the establishment on June 16, 1902.

In connection with what is above recited, the prominent feat-

237

ures of this case are the following:

1. When Carriere was informed that he was discharged, he entered no protest.

2. At no time did he inform Domecq & Son that he had secured a purchaser, or had a probable one in view.

3. At no time during Carriere's interviews with Schaumburg did the latter inform him that he could be looked upon as a possible purchaser; quite the reverse. Schaumburg stated to him that he was tied to his partnership business and could but extend to him his assistance in finding a purchaser, which assistance proved unavailing.

4. Schaumburg never was found by the broker as a purchaser but was by his principals pointed out to him (the broker) as a possible one. (His principals having perhaps in mind the negotiations of 1901.)

5. The record shows that the dissolution of the McCloskey & Schaumburg firm was accidental.

Under the searchlight of plaintiff's skilled counsel this dissolution could not be traced to Schaumburg's premeditated desire to avail himself of Carriere's informationof the contemplated or pending sale of defendant's establishment. Schaumburg unless so informed of which he was not, could hardly presume that the broker had an absolute right and an unlimitedtime to sell; or that such agency to sell had been revoked. As amatter of fact he was not concerned in any agreement between Carriere and Domecq & Son. The foregoing is, however, mentioned to show that no credence can reasonably be given to the suggestion of the shady character of Schaumburg's testimony or his leaning to protect any unfairness or double dealing leading to Carriere's discharge as an agent. The record on the contrary on careful reading, leads to the firm belief that this discharge of Carriere as a broker was the natural result of the exercise of a right defendants had and a sequence of their discouragement at the long delays (two months and some days) attendant upon their broker's fruitless attempts to effect a sale.

Mechem on Agency holds: Sect. 207, that "a mere interest in the results or proceeds of the execution of the authority (to sell lands) as by way of compensation, is not enough" i. e. as an interest to prevent revocation of the authority at the will of the principal. And again, under Sect. 210: "Where no express or implied agreement exists that the agent shall be retained for a definite time the power and the right of revocation coincide." In this case the broker was not retained for a definite time. Citing the language of a judge of the New York Court of Appeals and which appropriately fits the case at bar Mechem quotes Sect. 968:

"If inthe midst of negotiations instituted by a broker, and which were plainly and evidently approaching success, the seller should revoke the authority of the broker, with the view of concluding the bargain without his aid, and avoiding the payment of commissions

about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal. But if the latter acts in good faith, not seeking to escape the payment of commissions but moved fairly by a view of his own interest, he has the absolute right, before a bargain is made, while negotiations remain unsuccessful, before commissions are earned, to revoke the broker's authority; and the latter cannot thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated and even though, to some extent, the seller might justly be said to have availed himself of the fruits of the broker's labor."

Enough has been culled from the record of this case to show that, never, at any time, could Schaumburg have been viewed by Carriere as a purchaser; that this buyer, accidently, it may be said, prevailed on the defendants to alter their minds not to sell and by direct conference with them brought the matter to a close.

We see no error in the decree appealed from and the same is herein affirmed.

May 16, 1904.

Rehearing refused May 30, 1904.